1
2
3
4
5

Tammy Hussin (Bar No. 155290)
Lemberg & Associates LLC
6404 Merlin Drive
Carlsbad, CA 92011
Telephone (855) 301-2100 ext. 5514
thussin@lemberglaw.com

6
7
8
9

Lemberg & Associates LLC
A Connecticut Law Firm
1100 Summer Street
Stamford, CT 06905
Telephone: (203) 653-2250
Facsimile: (203) 653-3424

10
11

Attorneys for Plaintiff,
Charles Beard

12

13
14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

15

16
17

18

19
20

21
22
23

Charles Beard, *on behalf of himself and
all those similarly situated*,

    Plaintiff,

 vs.

Santander Consumer USA, Inc. and Triad
Financial Corporation,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.:

**CLASS ACTION COMPLAINT FOR
VIOLATION OF
SERVICEMEMBERS CIVIL
RELIEF ACT**

**JURY TRIAL DEMANDED**

24
25
26
27
28

# INRODUCTION

1.      Plaintiff, Sergeant Charles Beard ("Sgt. Beard"), files this Class Action Complaint ("Complaint") to recover for the unlawful vehicle repossession activities of Defendants, Santander Consumer USA, Inc. ("Santander") and Triad Financial Corporation ("Triad").  Defendants illegally and routinely repossess automobiles belonging to active duty United States Military personnel without first obtaining a court order, in direct contravention of the Servicemembers Civil Relief Act ("SCRA"), 50 App. U.S.C. § 532, *et seq.*  Defendants also fail to reduce the applicable interest rate to 6% for any servicemember who provides them notification under Section 527 of the SCRA.

2.      The SCRA aims to (1) "provide for, strengthen, and expedite the national defense through protection extended ... to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation"; and (2) "to provide for the temporary suspension of judicial ... proceedings ... that may adversely affect the civil rights of servicemembers during their military service." 50 U.S.C. § 502.

3.      Courts construe the SCRA to prevent any disadvantage to a servicemember litigant resulting from military service.

4.      Over the last decade, millions of courageous men and women have served our country in the military at tremendous cost to themselves and their families.

5.      While they have guarded our country, the SCRA has guarded them and their families against creditor remedies, such as vehicle repossession.  Rather than comply with the SCRA, the Defendants in this case are knocking on servicemembers' families' doors and taking their cars, without first obtaining the required court orders.  Defendants also fail to reduce applicable interest rates to 6% upon receiving appropriate notification of active duty military service.

6.      Plaintiff seeks to recover money for himself and other similarly situated military members harmed by Defendants' illegal conduct.

## JURISDICTION

7.      This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 in that Plaintiff's claims arise under the laws of the United States.

8.      Supplemental jurisdiction over Plaintiff's state law claims is grounded in 28 U.S.C. § 1367 as they arise from the same case or controversy as Plaintiff's federal claim.

9.       Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) as many of the acts and transactions forming the basis of the claims in this action occurred in substantial part in this District.

## PARTIES

10.     Sgt. Beard is a resident of Lemoore, California, and is a Sergeant, E5 in the United States Army National Guard.  At all relevant times herein, Sgt. Beard was a member of the 185th Cab. Infantry stationed in Riverside, California.

11.     Santander, a subsidiary of Sovereign Bank, is an auto lender organized under the laws of Illinois, with its principal business location at 8585 N. Stemmons Freeway, Suite 1100N, Dallas, Texas, 75247-3822.  Santander's registered agent in the state of California is the CT Corporation System, 818 W. Seventh Street, Los Angeles, California.

12.     Triad had been a California business entity based in Huntington Beach, California.  On or about December 2, 2009, Santander acquired Triad, becoming its successor-in-interest.

13.     Both Defendants are in the business of lending money to consumers, on a secured basis, for the purchase of automobiles.

14.     In addition, Defendants also from time to time purchase, and then service, portfolios of automobile loans originated by other auto-finance lenders.

## FACTS

15.     Since 2001, the number of active duty military personnel, including Army, Air Force, Navy and the Marine Corps has fluctuated from 1,115,000 to 1,585,116 at any given time.

16.     According to available statistics, approximately 1-2% of all vehicles subject to a security interest are repossessed.

17.     Sgt. Beard is a member in good standing of the United States Army National Guard.

18.     On or about September 25, 2007, Sgt. Beard entered into an automobile financing agreement with Triad in connection with his purchase of a Kia Sportage (the "Vehicle").

19.     Sgt. Beard made payments under the agreement, the first of which was received by Triad in November 2007.

20.     On August 4, 2008, and pursuant to Presidential Executive Order 13223 of September 14, 2001,[1] Sgt. Beard was ordered to Active Duty along with the rest of the 185th Cab. Infantry Unit.

21.     On August 16, 2008, in accordance with his deployment orders, Sgt. Beard reported for duty.  He and his unit were then deployed abroad in support of the United States' ongoing military efforts.

22.     On or about February 3, 2009, Defendants repossessed Sgt. Beard's Vehicle.

23.     At the time of repossession, Sgt. Beard was on active duty.

---

[1] Presidential Executive Order 13223 makes it possible to order any unit, and any member of the Ready Reserve not assigned to a unit, to active duty for not more than 24 consecutive months.

24.     At or about the time of repossession, Sgt. Beard's wife informed Defendants that her husband was on active duty and that a court order was required to repossess his car.

25.     One of Defendants' representatives told Mrs. Beard that she would go to jail for a stolen car if she did not turn in the vehicle.

26.     Neither at the time of repossession nor at any time thereafter did Defendants obtain a court order to repossess Sgt. Beard's vehicle.

27.     On February 26, 2009, Emily C. Mason, a Captain in the US Army and a Legal Assistance Attorney, advised Defendants in writing that, as an active duty servicemember, Sgt. Beard was eligible for the legal protections afforded by the SCRA.

28.     In her February 26, 2009 letter, Cpt. Mason put Defendants on notice that any repossession of an active duty servicemember's vehicle without a court order was a violation of the SCRA.  Cpt. Mason also advised Defendant not to charge Sgt. Beard more than 6% interest.

29.     Defendants did not respond to Cpt. Mason.

30.     Instead, around March 2009, Defendants sold Sgt. Beard's Vehicle at auction and have since retained the proceeds of that sale in addition to Sgt. Beard's previous payments.

31.     Since March 2009, Defendants have caused, and continue to cause, negative marks on Sgt. Beard's credit and have charged him more than 6% interest.

## DEFENDANTS' POLICIES

32.     Defendants have a policy of failing to verify, prior to undertaking voluntary repossession, whether the person whose vehicle is subject to repossession is serving on active duty.

33.     Defendants do not obtain court orders prior to repossessing active duty servicemembers' vehicles.

34.     As a result, Defendants fail to identify vehicles which may only be repossessed upon the grant of a writ of replevin, or of a substantially similar grant, by a court of competent jurisdiction.

35.     Diligent research has not disclosed any cases in the County of Riverside, California, in which Santander moved for permission to repossess an active duty servicemember's vehicle.

36.     In Virginia, New York, and Washington State, states heavily populated by military personnel, diligent research has revealed no cases where Triad or Santander moved for permission to repossess an active duty servicemember's vehicle.

37.     Nor are there any cases of that kind in Bexar County, Texas, the location of Joint Base San Antonio, which includes Fort Sam Houston, Randolph Air Force Base, and Lackland Air Force Base.

38.     As a result of Defendants' failure to determine whether a delinquent auto borrower is in the military or on active duty, Defendants routinely ignore servicemembers' rights under the SCRA and wrongfully repossess their cars without obtaining the requisite court orders.

39.     Internet postings show that Sgt. Beard is far from the only victim of unlawful repossession:

> We were behind in payments which we indured [sic'] their harrassing phone calls, mean accusations, and rude comments about our lack of responsibility. My husband was deployed to Iraq, and I made up the payment due plus I added an extra $200 to what was owed. The amount owed was $1,055 and I paid $1,200. I paid during the day, during normal business working hours and I was told that everything was fine. We were caught up and no other actions were needed. That evening about 7:00 pm, the repo guy showed up and took our van. My 2 sons (ages 5 and 4) are stuck in the house, out in the country without any means of a taxi cab, public bus, or friends to take us into town for food, water (we just had a flood and the public water system hasn't been cleared for consumption) and no way of picking up the vehicle, which they took to a place out-of-state. I was told that I have to pay the impound fees and have to pick up the van myself. I don't have another vehicle that I can take to pick up the van without leaving my 5 and 4 year olds at home -- alone. I can't take them in a 2 seater vehicle without their car seats, which are in the repo'd van. Drive Financial admitted multiple times that it was their fault

but "We can't do anything more for you" and "We can advise you but we can't help you". Most of the time they just hang up the phone on me in mid-sentence. How can a company legally repo a vehicle when the payments are current?
http://www.sueeasy.com/class_action_detail.php?case_id=373

So I'm currently working with bf's parents to help bf get his car back. (He's in Afghanistan at the moment). The car was reposessed and bf's parents contacted the company, Santander to see if we can recover the car with full payment. Santander said we had until 5/30 to pay off the car. Keep in mind the car was just repossessed.

We wanted this in writing so that we can pay and get the car back. We didn't get a Letter of Intent, but instead got a Payoff Letter saying that if we paid the remaining balance, plus the repo fees, they will mail us the title. Of course there's nothing here stating the possibility of being auctioned off, nor does it say anything about a repossession. it just lists our account number and our car make/model/year as collateral. Letter was addressed as "to Whom it may concern".....Also lists an address to mail payments to, but was told over the phone to make a payment via Western Union. Here's the website with the same instructions they gave over the phone ......

Not sure of the laws and if this is right. I just want to help pay the remaining balance on the car to get it back for my bf. But not sure if these should set off some red flags? Should I be getting a Letter of Intent? Or does it sound like the Payoff Notice suffices?

Oh, one more thing, they did say we had until 5/30 before car goes into auction, but when they sent the letter of intent, they listed the date as 4/30, and the car was repossessed on 5/9.

COMPLAINT FOR DAMAGES

http://answers.yahoo.com/question/index?qid=20110510 221407AAVCToI

40.    Defendants also have a policy and practice of charging active duty military personnel interest rates higher than 6% in violation of the SCRA.

## CLASS ACTION ALLEGATIONS

**A. The Class**

41.    The Classes of individuals that Plaintiff seeks to protect are defined as:

> **Class A: All servicemembers subject to the SCRA who entered into a retail installment contract and made a payment on such contract before entering military service as defined in the SCRA, and whose automobile retail installment contracts were terminated and vehicles repossessed by Defendants during such servicemember's active duty military service as defined in the SCRA.**

> **Class B: All servicemembers subject to the SCRA and their spouses, who were charged in excess of a 6% annual interest rate on automobile finance contracts by the Defendants after providing to Defendants required notification of a servicemember's active duty military service.**

> Excluded from these definitions are (a) each defendant, their corporate parents, subsidiaries, and affiliates or any person controlled or controlling such excluded persons, including their legal representatives, heirs, successors and assigns, (b) all persons whose claims arose outside the applicable statute of limitations, (c) all persons who acquired their vehicles after starting 'military service' as defined in the SCRA, and (d) as to Class A, any servicemembers whose vehicle was repossessed upon the entry of a court order authorizing such repossession, (e) as to Class B any servicemembers or spouses who were not charged in excess of 6% upon providing proper notification to Defendants.

**B. Numerosity**

42.     Since September 2001, millions of United States soldiers, sailors, airmen and marines have been mobilized and placed on active duty.

43.     It is believed on information and belief that the Defendants routinely repossess the vehicles of active duty military personnel without a court order.

44.     Therefore, the members of the Classes are believed to be so numerous that joinder of all members is impractical.

45.     The exact numbers and identities of class members are unknown at this time and can only be ascertained through appropriate discovery.

46.     Bringing the action as a class action will fairly ensure the adequate representation of all who may sue.

**C. Common Questions of Law and Fact**

47.     Plaintiff identifies the following questions of fact and law common to the Classes which predominate over any questions affecting only individual Class members:

> a.  Did Defendants violate the SCRA by repossessing the vehicles of servicemembers on active duty?
>
> b.  Do Defendants have a policy of ignoring whether vehicles they repossess are owned by active duty military servicemembers?

COMPLAINT FOR DAMAGES

c.  Did Defendants violate the SCRA by charging servicemembers on active duty an interest rate in excess of 6%?

d.  Did Defendants violate the California Unfair Competition Law, Cal. B.P.C. § 17200, *et. al.*, by repossessing the vehicles of servicemembers on active duty?

e.  Did Defendants wrongfully repossess the vehicles of servicemembers on active duty?

f.  Were Defendants unjustly enriched by proceeds from the sale of the repossessed vehicles?

48.  The common questions in this case are also capable of having common answers.  If Plaintiff's claim that Defendants have a policy of routinely repossessing the automobiles of active duty military personnel without a court order proves true, then Plaintiff and Class A will have identical claims capable of being efficiently adjudicated and administered in one class action case.

49.  Similarly, if it is true that Defendants routinely ignore requests for interest rate reductions from active duty servicemembers as they did in this case, then those claims will be identical with respect to liability determinations.

COMPLAINT FOR DAMAGES

**D. <u>Typicality</u>**

50.     Plaintiff's claims are typical of the claims of the members of the Classes in that Sgt. Beard and the members of the Classes sustained damages arising out of Defendants' violations of the SCRA.

**E. <u>Protecting the Interests of the Class Members</u>**

51.     Plaintiff will fairly and adequately represent all Class members, all of whom are victims of Defendants' unlawful and wrongful conduct.

52.     All of the Class members' claims arise from substantially the same course of conduct and specific activities complained of herein and require application of identical legal principles.

53.     Plaintiff has retained counsel experienced in bringing class actions and consumer class claims and who stands ready, willing and able to represent the Classes and advance the costs of this litigation.

**F. <u>Proceeding via Class Action is Superior and Advisable</u>**

54.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

55.     Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive and, therefore, would have no effective remedy at law.

56.     The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the court and the litigants and promotes consistency and efficiency of adjudication.

57.     Prosecution of separate actions could result in inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants.  Conversely, adjudications with respect to individual class members would be dispositive of the interest of all other class members.

58.     The amount of money at issue is such that proceeding by way of a class action is the only economical and sensible manner in which to vindicate the injuries sustained by Plaintiff and the other members of the Class.

### FIRST CAUSE OF ACTION
**(Violation of the SCRA - 50 App. U.S.C. § 532)**

59.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

60.     50 App. U.S.C. § 532 (a) states in pertinent part:

**(1)** Protection after entering military service
After a servicemember enters military service, a contract by the servicemember for—

**(A)** the purchase of real or personal property (including a motor vehicle); or
**(B)** the lease or bailment of such property,

---

may not be rescinded or terminated for a breach of terms of the contract occurring before or during that person's military service, nor may the property be repossessed for such breach without a court order.

**(2)** Applicability

This section applies only to a contract for which a deposit or installment has been paid by the servicemember before the servicemember enters military service.

61.     The term "military service" means—

> **(A)**     in the case of a servicemember who is a member of the Army, Navy, Air Force, Marine Corps, or Coast Guard—
>
> > (ii)     active duty, as defined in section 101(d)(1) of title 10, United States Code, and
> >
> > (iii)     in the case of a member of the National Guard, includes service under a call to active service authorized by the President or the Secretary of Defense for a period of more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds;
>
> **(B)**     in the case of a servicemember who is a commissioned officer of the Public Health Service or the National Oceanic and Atmospheric Administration, active service; and
>
> > (i)     any period during which a servicemember is absent from duty on account of sickness, wounds, leave, or other lawful cause.

62.    "Active duty" means full-time duty in the active military service of the United States. 10 U.S.C. § 101(d)(1).  Such term includes full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned.

63.    Sgt. Beard purchased the Vehicle on or about September 25, 2007, before he entered "military service" as defined in the SCRA.

64.    By November 2007, Defendants had received an installment on the Vehicle's financing.

65.    Sgt. Beard was called to active duty on or about August 16, 2008.

66.    In February 2009, Sgt. Beard was on active duty.

67.    Defendants repossessed the Vehicle on or about February 3, 2009, without a court order.  Defendants did so without regard to the Plaintiff's military status as an active duty service member.

68.    Defendants similarly repossessed vehicles belonging to other active duty servicemembers who were similarly situated to Sgt. Beard.

69.    In repossessing the vehicle, Defendants unlawfully terminated the contract with the Plaintiff.

70.     Defendants are therefore liable to the Plaintiff and Class A for

damages, including actual and punitive damages, prejudgment interest, costs and

attorneys fees, as set forth in 50 App. U.S.C. § 597a.

## SECOND CAUSE OF ACTION
### (Violation of the SCRA - 50 U.S.C. App. 527)

71.     Plaintiff repeats and realleges the above paragraphs of this Complaint

and incorporates them herein by reference.

72.     § 527 of the FCRA states:

Maximum rate of interest on debts incurred before military service

(a) Interest rate limitation.

> **(A)**(1) Limitation to 6 percent.  An obligation or liability
> bearing interest at a rate in excess of 6 percent per year that
> is incurred by a servicemember, or the servicemember and
> the servicemember's spouse jointly, before the
> servicemember enters military service shall not bear
> interest at a rate in excess of 6 percent – during the period
> of military service and one year thereafter, in the case of an
> obligation or liability consisting of a mortgage, trust deed,
> or other security in the nature of a mortgage; or
>
> **(B)**during the period of military service, in the case of any
> other obligation or liability.

73.     Under the SCRA, in order for an obligation or liability of a

servicemember to be subject to the interest rate limitation, the servicemember must

provide to the creditor written notice and a copy of the military orders calling the

servicemember to active duty and any orders further extending military service, not

---

17                          COMPLAINT FOR DAMAGES

later than 180 days after the date of the servicemember's termination or release from military service.

74.     Here, Beard and members of Class B provided Defendants with the requisite notice, yet Defendants continued to charge them interest in access of 6%.

75.     By reason of the foregoing, Sgt. Beard and members of Class B were injured.

### THIRD CAUSE OF ACTION
#### (Violations of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* – Classes A & B)

76.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

77.     California Business and Professions Code §§ 17200, *et seq.* defines unfair business competition to include any "unlawful, unfair and fraudulent" business act or practice.

78.     Pursuant to California Business and Professions Code §§ 17200 *et seq.*, and the common law of unfair competition, the business practices of Defendants described above are, and have been, unlawful, unfair and deceptive.

79.     Specifically, Defendants' practice of terminating contracts and repossessing automobiles belonging to active duty military personnel without a court order, and failing to reduce interest rates to 6% upon receiving notification, are unfair and deceptive business practices.

80.     As a result of Defendants' unlawful and unfair business practices, Plaintiff and the classes have suffered financial harm.

81.     Plaintiff, on behalf of himself, and on behalf of all similarly situated servicemembers, seeks all remedies and relief pursuant to the provisions of California Business and Professions Code §§ 17200, *et seq.*, including, inter alia, injunctive relief, restitution and the disgorgement of money acquired by means of the unlawful and unfair business practices alleged above.

## FOURTH CAUSE OF ACTION
### (Conversion – Class A)

82.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

83.     At the time of repossession Plaintiff and the members of Class A had the right to possess heir vehicles.

84.     50 U.S.C. App. 532 expressly forbids repossession of a servicemember's vehicle without a court order while the servicemember is on active duty.

85.     When the Defendants repossessed Plaintiff's vehicle and vehicles belonging to members of Class A and sold them they illegally converted the property for their own purposes in violation of the SCRA.

86.     Pursuant to Cal. Civ. Code § 3336, the detriment caused by the wrongful conversion of Plaintiff's vehicle and the vehicles of the members of

Class A is presumed to be "[t]he value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted"; and "[a] fair compensation for the time and money properly expended in pursuit of the property."

87.     Plaintiff, on behalf of himself, and on behalf of all similarly situated servicemembers, seeks the damages caused by Defendants' illegal repossession of their vehicles.

## FIFTH CAUSE OF ACTION
### (Wrongful Repossession – Class A)

88.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

89.     50 U.S.C. App. 532 expressly forbids repossession of a servicemember's vehicle without a court order while the servicemember is on active duty.

90.     Defendants did not have a court order allowing repossession of Plaintiff's vehicle and vehicles belonging to members of Class A.

91.     Therefore, Defendants did not have a right to take possession of the vehicles from Plaintiff and the members of Class A.

92.     Defendants are therefore liable to Plaintiff and Class A for damages caused by their wrongful repossession.

### SIXTH CAUSE OF ACTION
**(Unjust Enrichment – Classes A &B)**

93.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

94.     Defendants benefited from the unlawful repossession and conversion of the vehicles.

95.     Defendants have unjustly retained the proceeds of the sale, which rightfully belong to Plaintiff and the Class Members.

96.     Defendants were unjustly enriched by charging Plaintiff and members of Class B interest at a rate exceeding 6%.

97.     It is against equity and good conscience to permit Defendants to retain the ill-gotten proceeds of the Vehicle's repossession and sale and from charging illegal rates of interest.

98.     By virtue of the foregoing, the Plaintiff and Class members are entitled to recover the amount by which Defendants have been unjustly enriched.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for relief and judgment as follows:

A)     Actual damages;

B)   Compensatory damages;

C)   Punitive damages;

D)   Entry of an Order establishing a constructive trust over the wrongfully-obtained funds in Defendants' possession and appropriate supplemental orders, including appointment of a receiver and restrictions on distribution of such funds by Defendants;

E)   Plaintiff's reasonable attorneys' fees and costs; and

F)   Awarding such interest, costs, and such other and further relief this Court deems just and appropriate.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

DATED:  October 31, 2011                 TAMMY HUSSIN


By:   */s/ Tammy Hussin*
Tammy Hussin
Lemberg & Associates, LLC
Attorneys for Plaintiff, Charles Beard