1
2
3
4
5
6
7
8

## IN THE UNITED STATES DISTRICT COURT

9

## FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    CHARLES BEARD,                          CASE NO. 1:11-cv-11-1815 LJO-BAM

12                    Plaintiff,              **FINDINGS AND RECOMMENDATIONS
                                              ON DEFENDANTS' MOTION TO
13           vs.                              COMPEL ARBITRATION AND TO STAY
                                              ACTION**
14    SANTANDER CONSUMER USA, INC. and        (Doc.  18 )
15    TRIAD FINANCIAL CORPORATION ,

16                    Defendant.
                                     _____/
17
18
                              **INTRODUCTION**
19
20          Defendants Santander Consumer USA and Triad Financial Corporation ("Defendants") move to

21    compel arbitration of all claims made in this action by Plaintiff Charles Beard and similarly situated

22    individuals.[1] (Doc. 18). On March 30, 2012, a hearing on the motion was held.  Counsel Sergei Lemberg

23    appeared by telephone on behalf of Plaintiff. Counsel Felicia Yu and Eric Schaffer appeared by telephone

24    on behalf of Defendants.  Having considered the oral argument of counsel, the moving, opposition and

25    reply papers, as well as the Court's file, the Court recommends that Defendants' Motion to Compel

26    _____

27          [1]      Beard brings this action against Defendants Triad and Santander.  Triad was in the business of
      financing and servicing accounts for consumer vehicle purchases until it was purchased in 2009 by its successor
28    in interest Santander Consumer USA.  As a result of this purchase, Santander acquired all of Triad's rights and
      liabilities with respect to Triad's vehicle sales contracts.

                                              1

1  Arbitration and to Stay Action should be GRANTED.

2  **BACKGROUND**

3      In the underlying action, Beard brings a putative class action against Defendants alleging

4  violations of the Servicemembers Civil Relief Act, 50 U.S.C. App. §§ 501 *et seq*. Beard, a sergeant in

5  the United States Army National Guard, entered into an agreement to finance the purchase of a 2007 Kia

6  Sportage (the "Finance Agreement"), on or around September 25, 2007. Beard Aff'd. at 2, (Doc. 27-1).

7  The Finance Agreement obligated Beard to make seventy-one installment payments over a period of six

8  years. Approximately one year after signing the Finance Agreement, Beard was called into active military

9  service. Beard was scheduled to report for duty in San Bernadino, California on August 16, 2008. Eight

10 days before his departure, Beard notified Triad that he was subject to deployment and late on his car

11 payments. As such, Beard requested a forbearance of his August 2008 and September 2008 car payments.

12 Triad approved the two-month forbearance request and required Beard to sign a Modifications and

13 Extension Agreement ("Modification Agreement"). The Modification Agreement contained an

14 arbitration clause that required Beard to arbitrate all disputes "arising out of and in connection with, or

15 relating to" the Finance Agreement.

16 **The Arbitration Agreement**

17      The arbitration policy, as described in the "Modifications and Extension Agreement," provides

18 in pertinent part:

19      ***Arbitration*** –As additional consideration for Triad's agreement to forbear from exercising
        its remedies under the Contract, you and Triad agree that upon written request by either
20      party that is submitted according to the rules for arbitration, any Claim, except those
        specified below, shall be resolved by binding arbitration in accordance with (i) the Federal
21      Arbitration Act, (ii) the Rules of the chosen Administrator, and (iii) this Arbitration
        Provision .
22
        (a) Claims Covered. "Claim" means any claim, dispute, or controversy now or hereafter
23      existing between you and Triad, including without limitation, any claims arising out of,
        in connection with, or relating to the Contract, an any modification, extension,
24      application, or inquiry or credit or forbearance of payment; any trade-in or a vehicle, any
        products, good and/or services, including the installation thereof, purchased in connection
25      with the Contract; any insurance, service contract, extended warranty, auto club
        membership or debt cancellation agreement purchased in connection with the Contract;
26      the closing servicing, collection or enforcing of the Contract; whether the claim or dispute
        must be arbitrated; the validity of this Agreement; any negotiations between you and
27      Triad; any claim or dispute based on an allegation of fraud or misrepresentation, including
        without limitation fraud in the inducement of this or any other agreement; and any claim
28      or dispute based on state or federal law, or an alleged tort. You and Triad also agree to

2

1

2       submit to final binding arbitration any claim or dispute that you or Triad has against all
        persons and/or entities (i) who are involved with the Contract, (ii) who signed or executed
3       any document relating to the Contract or any Claim, and (iii) who may be jointly or
        severally liable to either you or Triad regarding any Claim.

4   Padilla Decl., Ex. B (Doc. 18-2).

5           Ultimately, Beard failed to keep up with his installment payments and while he was serving in

6   Iraq, Triad repossessed his vehicle without a court order and sold it at auction.  Beard now attempts to

7   pursue a putative class action against Defendants Triad and Santander alleging that Defendants violated

8   the Servicemembers Civil Relief Act of 2003 ("SCRA") by failing to obtain a Court order prior to

9   repossessing his car and by charging more than a 6% interest rate on his loan.

10          Rather than answer Beard's complaint, Defendants moved to stay the proceedings in this Court

11  and to compel Beard to arbitrate his claims under the Federal Arbitration Act, ("FAA"), 9 U.S.C. §§ 3,

12  4, as set forth in the arbitration clause of the parties' Modification Agreement. Beard raises two primary

13  challenges to the arbitration provision in the Modification Agreement.  First, Beard argues that because

14  the arbitration clause waives the right to a court trial as guaranteed under the SCRA, the Modification

15  Agreement must comply with the 12-point font requirements of 50 App. U.S.C § 517(c).  Moreover, the

16  arbitration clause in the Modification Agreement is not in 12-point font and it is therefore invalid.

17  Second, the arbitration clause is unconscionable and therefore should not be enforced by the Court.  Beard

18  Opp'n at 16, (Doc 27).

19                              **LEGAL STANDARD**

20      **A.      Relevant Law on the Servicemembers Civil Relief Act of 2003.**

21          In 2003, Congress amended the Servicemembers Civil Relief Act, 50 App. U.S.C. §§ 501 through

22  596 ("SCRA"). In doing so, Congress stated two purposes that the SCRA would further:

23              (1)     to provide for, strengthen, and expedite the national defense through
                        protection extended by this Act . . . to servicemembers[2] of the United

24

_____

25          [2]      The statute defines "servicemember" as "a member of the uniformed services, as that term is

26  defined in section 101(a)(5) of title 10, United States Code." 50 App. U.S.C. § 511(1). 10 U.S.C. § 101(a)(5)
    defines "uniformed services" to include: (i) the armed forces; (ii) the commissioned corps of the National

27  Oceanic and Atmospheric Administration; and (iii) the commissioned corps of the Public Health Service. 10
    U.S.C. § 101(a)(5). "The term 'armed forces' means the Army, Navy, Air Force, Marine Corps, and Coast

28  Guard." 10 U.S.C. § 101(a)(4).  The parties do not dispute that Beard was a service member at all relevant times.

                                            3

States to enable such persons to devote their entire energy to the defense needs of the Nation; and

(2)   to provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service.

50 App. U.S.C. § 502.

The SCRA acknowledges that a critical area of concern for many service members is the inability to attend to important legal matters and obligations during military service. To help alleviate such concerns, the SCRA provides certain protections in legal matters. Examples include: staying court hearings if military service materially affects service members' ability to defend their interests; reducing interest to 6% on pre-service loans and obligations; and requiring court action before a service member's family can be evicted from rental property or face repossession. *Id.* §§ 522, 527, 535(f).

Relevant to this action is 50 App. U.S.C. § 517, which discusses the waiver of protections granted by the SCRA. Protections granted by the SCRA may only be waived pursuant to a separate signed written agreement that meets the SCRA's specific requirements. Section 517 reads, in part:

(a)   In general. A servicemember may waive any of the rights and protections provided by this Act. Any such waiver that applies to an action listed in subsection (b) of this section is effective only if it is in writing and is executed as an instrument separate from the obligation or liability to which it applies. In the case of a waiver that permits an action described in subsection (b) the waiver is effective only if made pursuant to a written agreement of the parties that is executed during or after the servicemember's period of military service. The written agreement shall specify the legal instrument to which the waiver applies and, if the servicemember is not a party to that instrument, the servicemember concerned.

(b)   Actions requiring waivers in writing. The requirement in subsection (a) for a written waiver applies to the following:

   (1)   The modification, termination, or cancellation of —
      (A)   a contract, lease, or bailment; or
      (B)   an obligation secured by a mortgage, trust, deed, lien, or other security in the nature of a mortgage.
   (2)   The repossession, retention, foreclosure, sale, forfeiture, or taking possession of property that—
      (A)   is security for any obligation; or
      (B)   was purchased or received under a contract, lease, or bailment.

(c)   Prominent display of certain contract rights waivers. Any waiver in writing of a right or protection provided by this Act [sections 501 to 515 and 516 to 597b of

4

1
2
the Appendix] that applies to a contract, lease, or similar legal instrument must be
in 12 point type.

3    50 U.S.C. App. § 517.

4    **B. The Federal Arbitration Act**

5    The Federal Arbitration Act ("FAA") provides that an agreement to submit commercial disputes

6    to arbitration shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

7    equity for the revocation of any contract." 9 U.S.C. § 2.  The purpose of the Act was to put arbitration

8    agreements "upon the same footing as other contracts," thereby "reversing centuries of judicial hostility

9    to arbitration agreements" and allowing the parties to avoid "the costliness and delays of litigation."

10   *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510-11 (1974) (*quoting* H. R. Rep. No. 96, 68th Cong., 1st

11   Sess., 1, 2 (1924)).

12   In applying the FAA, courts have developed a "liberal federal policy favoring arbitration

13   agreements." *CompuCredit Corp. v. Greenwood*, 132  S. Ct. 665, 669 (2012) (quoting *Moses H. Cone*

14   *Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  A court's role in enforcing arbitration

15   agreements is "limited to determining (1) whether a valid agreement to arbitrate exists  and, if it does, (2)

16   whether the agreement encompasses the dispute at issue.  If the response is affirmative on both counts,

17   the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms."[3] *Chiron*

18   *Corp. v. Ortho Diagnostic Systems*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted).  The FAA

19   leaves no place for the exercise of discretion by a district court; the court must direct the parties to

20   proceed to arbitration on issues as to which an arbitration agreement has been signed.  *Dean Witter*

21   *Reynolds v. Byrd*, 470 U.S. 213, 218 (1985).  The Supreme Court has emphasized that courts should refer

22   a matter for arbitration  "unless it may be said with positive assurance that the arbitration clause is not

23   susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior*

24   *& Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).  "In the absence of any express provision excluding

25   a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the

26   claim from arbitration can prevail."  *Id.* at 584-85.  Thus, any doubt about the applicability of an

27

28
[3]      The parties do not dispute that the claims alleged are within the scope of the arbitration clause.  Therefore, the Court will not address the second prong of the arbitration provision analysis.

5

1   arbitration clause must be "resolved in favor of arbitration." *Id.* at 589.

2       At the same time, the "federal policy favoring arbitration does not apply to the determination of

3   whether there is a valid agreement to arbitrate between the parties." *Morrison v. Amway Corp.,* 517 F.3d

4   248, 254.  Given the "fundamental principle that arbitration is a matter of contract," *AT&T Mobility LLC

5   v. Concepcion*, 131 S. Ct. 1740, 1745, 179 L. Ed. 2d 742 (2011), to determine whether an agreement to

6   arbitrate is valid, courts apply "ordinary state-law principles that govern the formation of contracts."

7   *Morrison*, 517 F.3d at 254.  Both parties agree that California state law principles governing the

8   formation of contracts applies to this dispute.

9                                   **DISCUSSION**

10      **A.     Determination of the Issue of Arbitrability**

11      At the outset, the Court must address whether it or whether the arbitrator should determine the

12  issue of arbitrability.  The Modification Agreement provides that the arbitrator is to decide questions

13  concerning the validity of the arbitration agreement.  In an argument that relies on *Monex Deposit* Co.

14  *v. Gilliam,* the Defendants contend that "the validity of an arbitration clause is itself a matter for the

15  arbitrator where the agreement so provides."  *See* 616 F.Supp.2d 1023, 1026 (C.D. Cal. 2009).

16      In *Monex,* the plaintiffs moved to compel arbitration of the defendant's counterclaims.  The

17  defendant argued that the arbitration clause was unenforceable.  The court disagreed and granted the

18  motion in its entirety, noting that arbitration was appropriate because the arbitration agreement contained

19  a clause empowering the arbitrator to decide the scope and validity of the arbitration agreement.

20  Important to the court, was that "the arbitration agreement...twice provide[d] that disputes over the

21  'interpretation or validity of th[e] Agreement, including the determination of the scope or applicability

22  of this agreement to arbitrate, shall be . . . submitted to final and binding arbitration.'" *Monex*, 616 F.Supp

23  at 1025.

24      An issue of arbitrability will not be committed to an arbitrator unless the arbitration provision is

25  clear and unmistakable.  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).  For "a litigant

26  seeking to prove that the parties intended for the arbitrator to decide questions of arbitrability," the burden

27  has been described as "onerous."  *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 221 (3d Cir. 2007).

28

Further, when the presenting issue is whether a court or an arbitrator should determine arbitrability, "[t]he law  [applies a] reverse[ ] . . . presumption to favor judicial rather than arbitral resolution." *Shaw Group Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120-21 (2d Cir. 2003).  Thus, the presumption is against submitting arbitrability to arbitration.

Unlike in *Monex*, the relevant portions of the Modification Agreement, without more, do not "clearly and unmistakably" provide evidence that would sufficiently inform a potential customer that the validity of the arbitration clause itself must be decided by an arbitrator.  Here, the provision stating that the question of "whether the claim or dispute must be arbitrated" is buried in the definition of a claim.[4] *See* Padilla Decl. (Doc. 18-2). *See Kimble v. Rhodes College, Inc.,* 2011 U.S. Dist. LEXIS 59628 (N.D. Cal. June 2, 2011) (single statement in arbitration provision not enough to satisfy the clear and mistakable test)*; Wolf v. Nissan,* 2011 U.S. Dist. LEXIS 66649, 9-10 (D.N.J. June 22, 2011) (Court concluded that the arbitration provision "lacked sufficient specificity and clarity to enforce the arbitration clause without court action.").  The Supreme Court has cautioned that [c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that they did so." *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2777 (2010).

Arguably, the Modification Agreement language of "whether a claim or dispute must be arbitrated" is broad enough to encompass the issue of arbitrability, but given the presumption against arbitration of arbitrability, its one appearance in an unrelated paragraph is not sufficiently explicit  to satisfy the "clear and unmistakable" evidence test prescribed by the Supreme Court.  Accordingly, the

---

[4]       (a) Claims Covered. "Claim" means any claim, dispute, or controversy now or hereafter existing between you and Triad, including without limitation..., any claims arising out of, in connection with, or relating to the Contract, an any modification, extension, application, or inquiry or credit or forbearance of payment; any trade-in or a vehicle, any products, good and/or services, including the installation thereof, purchased in connection with the Contract; any insurance, service contract, extended warranty, auto club membership or debt cancellation agreement purchased in connection with the Contract; the closing servicing, collection or enforcing of the Contract; **whether the claim or dispute must be arbitrated**; the validity of this Agreement; any negotiations between you and Triad; any claim or dispute based on an allegation of fraud or misrepresentation, including without limitation fraud in the inducement of this or any other agreement; and any claim or dispute based on state or federal law, or an alleged tort. You and Triad also agree to submit to final binding arbitration any claim or dispute that you or Triad has against all persons and/or entities (i) who are involved with the Contract, (ii) who signed or executed any document relating to the Contract or any Claim, and (iii) who may be jointly or severally liable to either you or Triad regarding any Claim. (emphasis added).

Court will consider Beard's central challenges to the arbitration clause at issue.

### B.       Valid Agreement to Arbitrate

Beard alleges that his assent to the Modification Agreement was invalid because the arbitration clause was not executed in accordance with the waiver provisions of the SCRA section 517.  Beard's argument is multi-layered–asserting that (1) the SCRA grants service members a right to a court trial for violations of the SCRA, and (2) any waiver of that right must comport with the particular requirements governing waivers as articulated in Section 517.  Opp'n at 8.  Beard contends that the arbitration clause contained in the Modification Agreement is therefore invalid under the SCRA because it was i) not a separate instrument and ii) it was not in 12-point font.[5]

### i.  The SCRA Does Not Guarantee a Court Trial

Beard argues that under the SCRA, he has a right to pursue a *civil action* for violations of the Act. Opp'n at 8.  As authority, Beard cites to *Linscott v. Vector Aero* and SCRA section 597 to argue  that, Congress' intent is to require judicial proceedings for violations of the SCRA.  *Linscott v. Vector Aero.,* No. CV05-682-HU, 2006 U.S. Dist. LEXIS 6287 (D. Or. Jan. 31, 2006).  Section 597  states in pertinent part:

> any person aggrieved by a violation of this Act may in a **civil action**–(1) obtain any appropriate equitable or declaratory relief with respect to the violation; and (2) recover all other appropriate relief, including monetary damages. (emphasis added).

50 U.S.C. § 597; *see also Linscott,* 2006 U.S. Dist. LEXIS 6287 at *14  (a case arising under SCRA finding that a private right of action for damages exists under § 537 of the SCRA).

Beard's argument is unconvincing. The Supreme Court has expressly rejected the identical argument that statutory language referring to a "civil action" guarantees a right to bring an action in Court in lieu of arbitration.  *See CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665 (U.S. 2012).   In *Compucredit Corp*, consumers sued a credit card marketer alleging that excessive fees violated the Credit

---

[5]      Beard presents evidence that expert analysis reveals that the arbitration clause was in 7.1-point font. *See* Butterick Decl. at Exh. B, p. 2.  Defendants object to this evidence arguing that the expert testimony should be disregarded in its entirety because it lacks foundation and is irrelevant to the case.  Def's Objections, Doc. 30. Defendants' objection is moot.  The Court has determined that Section 517 of the SCRA mandating waivers be in 12-pont font is inapplicable to the Modification Agreement.  Thus, the actual font size of the agreement has no bearing on the decision to compel arbitration.

Repair Organization Act (CROA). *CompuCredit Corp.,* 132 S. Ct. at 668.  Defendants sought to compel

arbitration arguing that the consumers agreed to binding arbitration in their credit repair applications. *Id.*

In opposing arbitration, the consumers argued that the CROA's civil-liability provision demonstrated that

the Act provides consumers with a "right" to bring an action in court. *Id.* at 670.  In support, the

consumers cited to the federal statutes repeated use of the terms "action," "class action," and "court,"

terms they argued call to mind a judicial proceeding. *Id.*  The Supreme Court disagreed with the

consumers, stating that generic statutory language does not override the FAA:

> [The consumers] suggest that the CROA's civil-liability provision [] demonstrates that
> the Act provides consumers with a 'right' to bring an action in court.  These references
> cannot do the heavy lifting that respondents assign them.  It is utterly commonplace for
> statutes that create civil causes of action to describe the details of those causes of action,
> including the relief available, in the context of a court suit. If the mere formulation of the
> cause of action in this standard fashion were sufficient to establish the 'contrary
> congressional command' overriding the FAA…valid arbitration agreements covering
> federal causes of action would be rare indeed. But that is not the law.

*Id.* at 670. (citations omitted).

The Supreme Court was emphatic in its explanations that it has "repeatedly recognized that

contractually required arbitration of claims satisfies the statutory prescription of civil liability in court."

*Id. (citing Gilmer v. Interstate/Johnson Lane Corp*., 500 U. S. 20, 28 (1991); *Shearson/American Express*

*Inc. v. McMahon*, 482 U. S. 220, 240 (1987)).  The Court noted that had Congress meant to prohibit

arbitration through the use of common terms such as "right to sue," "action," and "court," it would have

done so with a clarity that far exceeds the claimed indications by the consumers. *Id.* at 672.  The

Supreme Court further stated that "because the CROA is silent on whether claims under the Act can

proceed in an arbitrable forum, the FAA requires the arbitration agreement to be enforced." *Id.* at 673.

Applying the principle squarely propounded by the Supreme Court in *Compucredit Corp*, this

Court concludes that a right to a civil action as envisioned by Beard may be pursued in an arbitrable

forum.  Like the CROA, the SCRA provides for a civil action, but does not proscribe arbitration.  The

SCRA is silent on the issue, as is the CROA.  Arbitration agreements are valid  unless Congress evinces

a contrary intent in the text, history, or purpose of the statute.   For example, more recently enacted

statutes expressly disallow arbitration.  Provisions of the Dodd-Frank Act amend the whistleblower

provisions of the Sarbanes-Oxley Act to make unenforceable any predispute arbitration clause for

1  disputes arising under those whistleblower sections. Pub. L. No. 111-203, 124 Stat. 1376, 1746, 1848

2  (codified as amended at 7 U.S.C. § 26(n) and 18 U.S.C. § 1514A(e)).[6]  Where Congress intends for

3  claims to be nonarbitrable, it does so explicitly.  Therefore, because the SCRA does not contains

4  provisions similar to the anti-arbitration provision found in legislation such as the Dodd-Frank Act, the

5  Court finds that an arbitration proceeding satisfies the right to a civil action under the SCRA.

6              ii.      **Section 517's Font and Format Requirements are Inapplicable to the**

7                      **Modification Agreement**

8          As a related argument, Beard contends that waiver of SCRA rights contained in a modification

9  to a pre-existing contract must meet the stringent font and format requirements of Section 517. Read

10 together, SCRA Section 517 (b) & (c) state that a modification of a pre-existing contract containing a

11 waiver of rights granted by the SCRA must be in writing and in 12 point type. 50 U.S.C. App. §

12 517(b)(1), (c). Beard explains that the Finance Agreement he  initially signed  was silent on the issue of

13 arbitration. In August 2008, when Beard notified Triad of his deployment, Triad sought to modify the

14 Finance Agreement.  The Modification Agreement set forth that Beard must agree that upon request he

15 would submit claims to binding arbitration rather than in Court.  According to Beard, because he retained

16 the right to a Court trial in the Finance Agreement, the subsequent Modification Agreement and

17 arbitration clause are a waiver of rights through a modification to a pre-existing contract.  Thus, according

18 to Beard, the Modification Agreement is unenforceable because it was not in 12-point type and not in a

19 separate instrument as required by Section 517 of the SCRA.  The Court disagrees.  As noted above, an

20 arbitration proceeding is not considered a waiver of a civil action under the SCRA and as such the

21 requirements for waivers under the SCRA are inapplicable to Modification Agreement.

22         The Court's conclusion in this regard is further supported by the recent federal decision in *Wolf*

23 *v. Nissan Motor Acceptance Corp.*, 2011 WL 2490939, No. 10-cv-3338, *5 (D.N.J. June 22, 2011).  The

24 *Wolf* Court has explicitly recognized that arbitration provisions are not considered a "waiver of the rights"

25 granted to service members under the SCRA. Even though *Wolf* does not have the full weight of Supreme

26 _____

27         [6]        In creating whistleblower protection for employees raising possible violations of the Dodd-Frank
   Act, Dodd-Frank also rendered unenforceable any individual predispute arbitration agreements for such disputes.
28 Pub. L. No. 111-203, 124 Stat. 1376, 2035 (codified at 12 U.S.C. § 5567(d)).

1  Court precedent found in *CompuCredit Corp*, it is nevertheless persuasive and instructive authority.  In

2  *Wolf v. Nissan Motor Acceptance Corp.*, the district court expressly held that Section 517 of the SCRA

3  does not govern arbitration agreements as "there is no indication that the SCRA protects service members

4  from class action or arbitration waivers to which they assented."  *Wolf v. Nissan Motor Acceptance Corp.*,

5  2011 WL 2490939, No. 10-cv-3338, *15 (D.N.J. June 22, 2011).

6       In *Wolf*, the plaintiff, seeking to avoid arbitration argued that a class action waiver was a waiver

7  governed by Section 517 of the SCRA and therefore invalid.  The Court disagreed stating:

8           the class action waiver does not deprive Wolf of any SCRA rights or privileges... Should
            the SCRA guarantee service members the right to a class-wide proceeding to vindicate
9           their statutory benefits, then that has not been made apparent to the Court. The SCRA
            protects service members in certain dealings with motor vehicle leases, and private
10          contracts contravening those protections may have to succumb to the federal statute. But
            there is no indication that the SCRA protects service members from class action or
11          arbitration waivers to which they assented.

12  *Wolf*, 2011 U.S. Dist. LEXIS 66649 * 15.

13       The Court agrees with the holding in *Wolf*.  While, the SCRA provides service members a variety

14  of protections against such diverse ills as dealings with motor vehicle leases (50 U.S.C. § 527),

15  cancellation of life insurance contracts (50 U.S.C §§ 541-549), and the entry of default judgments (50

16  U.S.C. § 521), the SCRA is silent on whether claims can be brought in arbitration or as class actions.

17  The purpose of the  SCRA is to free members of our Armed Forces from civilian obligations to the extent

18  that those obligations may distract or interfere with our service members' military service and objectives.

19  When an individual or entity imposes undue hardship upon a service member in violation of the SCRA,

20  the statute provides  remedies.  However, the SCRA, does not bar or otherwise invalidate an arbitration

21  provision.  *Id.* at 22.

22       Beard cannot and does not point to any section or subsection within the SCRA which precludes

23  an arbitration agreement and case law establishes otherwise.  Absent specific statutory language, coupled

24  with the liberal federal policy favoring arbitration, the Court does not find that the SCRA nullifies a

25  contractual agreement mutually adopted by private parties.  *See Compucredit Corp*, 132 S. Ct. at 673

26  (when a federal statute is silent as to whether claims can proceed in an arbitrable forum, the FAA requires

27  the arbitration agreement to be enforced according to its terms).  The arbitration provision is not a waiver

28  under the SCRA, and therefore, the font and format requirements governing waivers under Section 517

1  of the SCRA do not apply to the Modification Agreement at issue here.

2       **C.    The Agreement is Enforceable**

3       Beard also contends that even if the arbitration agreement is valid, the Court should deny the

4  motion because the arbitration agreement is both substantively and procedurally unconscionable under

5  *Armendariz v. Foundation Health Psychcare Services, Inc.* and thus unenforceable. *Armendariz v.*

6  *Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 114 (2000); Opp'n at 14.

7          **i.    California Law on Unconscionability**

8       Unconscionability is a defense to contract formation, and so state law applies. *Coneff v. AT&T*

9  *Corp.*, ___ F.3d ____, 2012 U.S. App. LEXIS 5520 *14 (9th Cir. Mar. 16, 2012). "Under California law,

10 unconscionability has both procedural and substantive elements, and both elements must be present for

11 a court to invalidate a contract on the ground of unconscionability." *Baker v. Osborne Development*

12 *Corporation*, 159 Cal. App. 4th 884, 894, 71 Cal. Rptr. 3d 854 (2008). There is a sliding scale relative

13 to both components: "the more substantively oppressive the contract term, the less evidence of procedural

14 unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."

15 *Armendariz*, 24 Cal. 4th 83 at114.

16      The primary California case on unconscionability under California law is *Armendariz*. *Id.* at 83.

17 In that case, two individuals filled out employment applications with predispute arbitration clauses. *Id.*

18 at 91. After they were hired, they executed a second employment arbitration agreement. *Id.* They were

19 later fired and sued, alleging wrongful termination under California's Fair Employment and Housing Act.

20 *Id.* Their employer countered by filing a motion for an order to compel arbitration. The employees

21 responded that the arbitration agreement was unenforceable because it was unconscionable. *Id.* at 92. The

22 California Supreme Court, relying on the D.C. Circuit's decision in *Cole v. Burns International Security*

23 *Services*, 105 F.3d 1465, 1482 (1997), set out four requirements for any mandatory employment

24 predispute arbitration agreement to survive an unconscionability challenge. First, the agreement could

25 not limit statutorily available remedies, such as punitive damages and attorneys' fees. *Armendariz*, 24 Cal.

26 4th 83 at 104. Second, the agreement could not preclude the availability of adequate discovery. *Id.*

27 Third, a written decision had to accompany any arbitration decision, to permit judicial review. *Id.* at 106.

28 Fourth, "when an employer imposes mandatory arbitration as a condition of employment, the arbitration

1  agreement or arbitration process cannot generally require the employee to bear any type of expense that

2  the employee would not be required to bear if he or she were free to bring the action in court." *Id.* at 107.

3       Applying these requirements, the California Supreme Court found two provisions of the

4  arbitration clauses unlawful.  First, only the employee—not the employer—was to submit claims to

5  arbitration. Second, the arbitration clauses impermissibly limited the employees' statutorily available

6  remedies. *See id.* at 697.

7       The general *Armendariz* rule has been criticized following the Supreme Court's ruling   in

8  *Concepcion.  See  Kilgore v. Keybank, N.A.*, ___ F.3d _____ 2012 U.S. App. LEXIS 4736, 2012 WL

9  718344 *13 (9thCir Mar. 7, 2012).  In *Concepcion*, the Supreme Court held that the FAA preempted

10 California common law deeming most class-action arbitration waivers in consumer contracts

11 unconscionable. *Id.* at 1746.  The Court held that limits to class arbitration imposed by state courts were

12 inconsistent with the FAA.  *Concepcion,* 131 S. Ct. at 1750-51.  *Concepcion* establishes, if a generally

13 applicable state law doctrine, such as unconscionability, is applied by a particular state in a fashion that

14 disfavors arbitration, then that rule interferes with  arbitration and is preempted by the FAA.  *Id.* at 1747-

15 50; *see also Kilgore,* 2012 U.S. App. LEXIS 4736 ("In short, a state statute or judicial rule that applies

16 only to arbitration agreements, and not to contracts generally, is preempted by the FAA.").  Thus, "[s]tates

17 cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons."

18 *Concepion*, 131 S. Ct. at 1753.

19      While Courts have questioned *Armendariz's* continuing viability after *Concepcion*,[7] *Concepcion*

20 does not upset the long-settled principle that, under the FAA, "generally applicable contract defenses,

21 such as fraud, duress, or unconscionability," may make an arbitration clause unenforceable. 131 S. Ct.

22 at 1746; *see also Kilgore*, 2012 U.S. App. LEXIS 4736, 2012 WL 718344, at *13 ("*Concepcion* did not

23 overthrow the common law contract defense of unconscionability whenever an arbitration agreement is

24

25 _____

   [7]     *See Ruhe v. Masimo Corp.*, No. SACV 11-00734-CJC(JCGx), 2011 U.S. Dist. LEXIS 104811, 2011 WL
26 4442790, at *2 (explaining that FAA preemption might change the reasoning and result of Armendariz but
   avoiding the question because the clause at issue did not violate the case); *Oguejiofor v. Nissan*, No. C-11-0544
27 EMC, 2011 U.S. Dist. LEXIS 99180, 2011 WL 3879482, at *3 (N.D. Cal. Sep. 2, 2011) (noting that Concepcion
   abrogated *Armendariz* in part (without specifying which part)); *Lona v. Citibank*, N.A., 202 Cal. App. 4th 89 (Ct.
28 App. 2011) (same); *Baeza v. Superior Court*, 201 Cal. App. 4th 1214 (Ct. App. 2011) (same).

1  involved."). Instead, *Concepcion* clarifies that state-law contract defenses—such as

2  unconscionability—that are applied to disfavor arbitration are preempted by § 2. *See id.* at 1747-48;

3  *Kilgore*, 2012 U.S. App. LEXIS 4736, 2012 WL 718344, at *13. Accordingly, the Court will turn to

4  Beard's arguments regarding unconscionability of the arbitration clause.

5              **ii.    Beard's Substantive Challenges to the Arbitration Clause**

6          A substantive unconscionability inquiry focuses on contract terms that are "overly harsh" or

7  "one-sided." *Armendariz*, 24 Cal. 4th at 114. "[M]utuality is the 'paramount' consideration when

8  assessing substantive unconscionability." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997-98 (9th Cir. 2010).

9  To avoid being found substantively unconscionable, "arbitration agreements must contain at least 'a

10  modicum of bilaterality'...." *Armendariz*, 24 Cal. 4th at 119.

11         Beard contends that the arbitration provision is substantively unconscionable on the grounds that

12  (1) it lacks mutuality because it permits Defendants to exercise self-help remedies, outside of arbitration;

13  and (2) the agreement denies Beard the right to attorneys' fees if successful. Opp'n at 20. Relying on

14  *Armendariz*, Beard argues that an agreement to arbitrate lacks "basic fairness and mutuality if it requires

15  one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or

16  occurrence." *Armendariz*, 24 Cal. 4th at 120. Beard contends that the arbitration provision at issue

17  requires him to arbitrate any disputes with Defendants, but permits Defendants to utilize the self-help

18  remedy of repossession without first going to Court to obtain a Court order. Defendants respond that

19  under *Armendariz* the arbitration provision is bilateral because it requires both parties to be subject to

20  arbitration and the few situations in which Defendants is not required to arbitrate are well reasoned. *See*

21  *Armendariz*, 24 Cal. 4th at 113.

22         "Where the party with stronger bargaining power has restricted the weaker party to the arbitral

23  forum, but reserved for itself the ability to seek redress in either an arbitral or judicial forum, California

24  courts have found a lack of mutuality supporting substantive unconscionability." *Nagrampa v.*

25  *MailCoups, Inc.*, 469 F.3d 1257, 1286 (9th Cir. 2006). Although Beard does not cite to any authority to

26  support his lack of mutuality argument, at least one California case has found that an arbitration provision

27  reserving the extra-arbital remedy of self-help repossession for one party has been found unconscionable.

28  *See, e.g., Sanchez v. Valencia Holding Co., LLC*, 201 Cal. App. 4th 74 (Cal. App. Nov. 23, 2011) (finding

                                                    14

1   that by exempting repossession—to which only the car dealer would resort—from arbitration, while

2   subjecting a request for injunctive relief—the buyer's comparable remedy—to arbitration, the provision

3   created an unduly oppressive distinction in remedies, forcing the weaker party to arbitrate claims but

4   exempting claims most likely to be filed by the stronger party).

5          Here, the lack of mutuality is not unconscionable.  The absence of an exact parallel between the

6   parties' obligations under an arbitration agreement does not require the Court to find the agreement to

7   be unconscionable.  California law requires an arbitration agreement to have only a "modicum of

8   bilaterality." *see Armendariz*, 24 Cal. 4th at 117.  The arbitration agreement at issue does not require one

9   party but not the other to arbitrate its most likely filed claims, as did the arbitration agreement in *Sanchez.*

10  The *Sanchez* Court was concerned that "the buyer [there] had no effective self-help remedies against the

11  car dealer, and none of the buyer's remedies [were]  exempt from arbitration.  Yet one of the most

12  important remedies to a consumer—injunctive relief—is subject to arbitration." 201 Cal.  App.  4th at

13  100.  Here, the Modification Agreement expressly states, "any claim where all parties collectively seek,

14  in the aggregate, $15,000 or less in total monetary relief...or any Claims brought in a small claims court"

15  are excluded from arbitration.  (Doc. 18-2).  The arbitration agreement allows any party to freely litigate

16  its claims against the other party in a judicial proceeding in certain instances.  The arbitration agreement

17  also does not permit Defendants unrestricted access to the Courts, as either party can request arbitration.

18  While Defendants retain the self-help remedy of repossession, Beard has comparable non-arbitrable

19  remedies available.

20         Finally, even if an arbitration self-help provision is deemed unilateral, it is still enforceable if there

21  is some reasonable justification for it.  *Id.*  at 117.  A contract can provide a "'margin of safety' that

22  provides the party with superior bargaining strength a type of extra protection for which it has a legitimate

23  commercial need without being unconscionable." *Id.*  If the drafting party has a "reasonable justification

24  for the arrangement-*i.e.*, a justification grounded in something other than the [party's] desire to maximize

25  its advantage based on the perceived superiority of the judicial forum-such an agreement would not be

26  unconscionable.

27         The arbitration provision here provides a low cost, fair, and consumer friendly forum which

28  allows consumers to effectively vindicate their rights.  All proceedings would occur near Beard's home

15

1  and Defendants will advance any associated arbitration fees. (Doc. 18-2). The arbitration provision not

2  only benefits Beard by providing him with a fair and low cost forum, but also benefits all consumers by

3  enabling Defendants to maintain low costs. Accordingly, the Court finds that there is a reasonable

4  justification for the unilateral arbitration provision. *See McCabe v. Dell, Inc.*, 2007 U.S. Dist. LEXIS

5  40137 (C.D. Cal. Apr. 12, 2007) (consumer based contract not substantively unconscionable where

6  arbitration provision provided a low cost, fair, and consumer friendly forum).

7      Beard also argues that enforcing the arbitration clause would deny him the right to costs and

8  attorney fees to which he would be entitled under the SCRA. To the contrary, the "applicable arbitration

9  rules" provision is not unconscionable. The rules and procedures that govern the arbitration agreement

10 specifically permit an aggrieved party to state and obtain an award for costs and attorney's fees.[8] Thus,

11 the provision's plain language does not directly result in the loss of attorneys fees feared by Beard.

12      For all of these reasons, the Court finds that the arbitration provision is not so "unfairly one-sided"

13 to render it substantively unconscionable.

14              **iii.    Procedural Unconscionability**

15      The Court now turns to Beard's challenge of procedural unconscionability. Under the sliding scale

16 rule  articulated above, because the arbitration agreement is minimally substantively unconscionable,

17 Beard must demonstrate that the terms of the agreement are procedurally unconscionable to a significant

18 degree. *Armendariz*, 24 Cal. 4th 83 at114. The Court finds that Beard has not done so.

19      According to Beard, the contract here was one of adhesion due to the timing of the agreement.

20 Beard notified Defendants that he had received activation orders, was on active duty, and would be

21 deploying. The Modification was then presented to Beard on a take-it-or-leave-it basis–making it an

22 adhesive contract. Opp'n at 22. Further, there was no opt-out clause to provide Beard, the party with less

23 bargaining power, a meaningful opportunity to opt out of arbitration. *See, Alvarez v. T-Mobile USA, Inc.*,

24

25      [8]    The applicable arbitration rules are those of the National Arbitration Forum and the American
26 Arbitration Association. *See* Padilla Decl. at Exh. B, p. 2. *See also* Forum Code of Civil Procedure,
   Rule 12B (available at www.adrforum.com) (permitting party to state a claim for attorney's fees); see
27 *see also* AAA Commercial Arbitration Rules and Mediation Procedures at R. 43 (available at
   http://www.adr.org/sp.asp?id=22440#R45) (permitting award of attorney's fees if authorized by law).
28

1  2011 WL 6702424, *6 (E.D. Cal. Dec. 21, 2011).  Defendants disputes that their agreement was an

2  adhesion contract, contending that their agreement was a bargained-for contract entered into as a

3  negotiation for deferred installment payments. (Doc. 28 at 1).

4      Procedural unconscionability "focus[es] on 'oppression' or 'surprise' due to unequal bargaining

5  power[.]" *Concepcion*, 131 S. Ct. at 1746 (quoting *Armendariz*, 6 P.3d at 690). "Oppression results from

6  unequal bargaining power, when a contracting party has no meaningful choice but to accept contract

7  terms.  Unfair surprise results from misleading bargaining conduct or other circumstances indicating that

8  party's consent was not an informed choice." *Dotson v. Amgen, Inc*., 181 Cal. App. 4th 975, 980 (Ct.

9  App. 2010).

10      The subject matter of the Modification Agreement relates to the financing of a motor vehicle.

11  Customers, like Beard, preparing to report for active duty, may have no real opportunity to negotiate or

12  modify the terms of the deal.  Beard presents evidence that he only had eight days to report for active

13  duty, depriving him an opportunity to negotiate.  The Court is not impervious to the public interest factors

14  that weigh heavily here.  Beard requested a modification of his finance agreement in order to forbear his

15  car payments due to his deployment to Iraq. As a service member, Beard is required to drop his own

16  affairs to take up the "burdens of the nation." *Boone v. Lightner*, 319 U.S. 561, 575 (1943) (discussing

17  the sacrifices service members make which necessitated the SCRA).  He is required to devote himself

18  to serious business, and is not in the optimal position to spend his time shopping for better financing

19  terms.  Accordingly, Beard has presented some evidence that the Modification Agreement was presented

20  on a "take-it-or-leave" basis, with little or no option for Beard  to negotiate.

21      In light of the Supreme Court's decision in *Concepion*, however, the Court does not find that the

22  adhesive nature of the agreement weighs strongly in favor of procedural unconscionability. *Concepcion*,

23  131 S.Ct. at 1750 (holding that "the times in which consumer contracts were anything other than adhesive

24  are long past").  The conduct of the parties also decreases the adhesive nature of the Modification

25  Agreement.  The Modification Agreement was a result of a negotiation between Beard and Defendants.

26  Beard approached Triad about modifications to an existing loan.  At the time of his request, Beard was

27  already behind on his car payments for reasons unrelated to his active duty status.  Beard requested a

28  forbearance from Triad, which it had no legal obligation to provide.  The Modification Agreement

1  presented to Beard explicitly stated that as additional consideration for Triad's agreement to forbear loan
2  payments, Beard agrees to arbitrate his claims if requested by either party.  Defendants offered Beard an
3  opportunity to extend the due dates for his car payments, and Defendants reasonably required something
4  in return–Beard's agreement to arbitrate his claims.  Beard's status as an active duty service member
5  presents some evidence of economic compulsion exerted upon Beard, but he was able to walk away from
6  Defendants' offer to defer his payments.  Beard had no obligation to pursue his claims through arbitration
7  in his original contract. Thus, his agreement for binding arbitration was part of a bargained-for exchange.
8  Beard, as the party who reaped the benefits of an agreement must also accept the agreement's
9  accompanying burdens.  *In re Toyota Motor Corp. Unintended Acceleration Mktg*., 2012 U.S. Dist.
10  LEXIS 33821 at *208 (C.D. Cal. Mar. 12, 2012).

11       Further, there was no element of surprise.  The arbitration provision was not hidden in the
12  contract; it is the longest provision in the relatively short Modification Agreement.  The Modification
13  Agreement contains two pages of text, and the majority of that text is devoted to discussing the terms of
14  the arbitration agreement.  Thus, the Court finds that though the arbitration agreement contains elements
15  of procedural unconscionability, the evidence of procedural unconscionability is not strong enough to
16  render it unenforceable.

17                    **CONCLUSION AND RECOMMENDATIONS**
18       For the reasons stated above, the Court **HEREBY RECOMMENDS**, that:
19    1.    Defendants' Motion to Compel Individual Arbitration and to Stay Action be **GRANTED**
20          (Doc. 18);
21    2.    The claims alleged by Plaintiff Charles Beard included in the Complaint should be
22          submitted to arbitration pursuant to the arbitration clause included in the Modification
23          Agreement;
24    3.     Defendants shall file a notice of completion with the Court within thirty (30) days of the
25          completion of arbitration;
26    4.    The Court **STAYS** this action pending the outcome of the arbitration.
27       These findings and recommendations are submitted to the district judge assigned to this action,
28  pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local Rule 304.

Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

         IT IS SO ORDERED.

   **Dated:    April 13, 2012               /s/ Barbara A. McAuliffe          **
                                      UNITED STATES MAGISTRATE JUDGE